JOURNAL ENTRY AND OPINION
Appellant (mother) appeals the award of permanent custody of two of her four children to the county.[1] Two sons, one born in 1985 and another born in 1989, are the subject of this appeal. The boys have been in county custody since February of 1996, when mother asked for the county's help because she could not cope with them and a handicapped son, born in 1990.
All three children were placed in the temporary custody of the county, and the two boys were placed together in a foster home. In anticipation of reunification with the two boys, mother was given a case plan by the social worker. This case plan required mother to successfully complete parenting education, to undergo a psychological evaluation and comply with the resulting recommendations, and to learn effective household and financial management so that she could provide stable and safe housing for the boys.[2]
Mother claims that she completed two sessions of parenting classes, underwent the psychological exam and attended counseling, and maintained a safe and stable home for her sons. The county, on the other hand, states that although she attended two sessions of classes, she failed to learn proper parenting techniques, as was evidenced by the children's condition when they returned from visits with her. The social workers who drove them from the mother's home back to the foster home testified that the boys were unwashed, extremely overtired, and ravenous. The younger boy also complained to the social worker that his older brother repeatedly sexually assaulted him in their mother's home. The county argues, therefore, that mother failed to maintain a safe and stable home for the boys.
Appellant presents four assignments of error.
For her first assignment of error, appellant states:
 I. THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY IS IN THE CHILDREN'S BEST INTEREST.
In determining what is in the best interest of the child, courts are to consider the five factors listed in R.C. 2151.414(D):
 In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard to the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The first factor for the court to consider is the probability of the child being adopted and whether adoption would benefit the child. The social workers were not able to say that the older boy had a good chance of being adopted. The younger boy has been in county custody since early 1996, almost half of his life. He was considered the more adoptable child of the two boys, but, because reunification plans were being considered, the foster parents were not approached about adopting the boys.
The second factor for the court to consider in determining the best interest of the child is the interaction and interrelationship of the child with his family and foster family, as well as any other person who has a significant relationship with the child. Ms. Steepleton,[3] a social worker, observed that the younger boy was more likely to adapt to life in a healthy home away from the influence of his family because he was well adjusted to his foster family and did well in school when problems with his brother or mother did not interfere.
The older boy has a more cordial relationship with his mother than the younger boy and was happy to visit her. His documented problems, according to the social worker, required residential treatment, which requirement alone, precludes his being reunited with his mother.
According to the testimony of the social workers, the younger boy had adjusted to his foster home and was often reluctant to visit in his mother's home. Social worker Warner noted the younger boy's demeanor and attitude reflected a desire to stay with his foster family instead of spending the weekend with his mother.
The younger child's relationship with his brother is also a factor. The younger boy exhibited antagonistic and angry behavior toward his brother and indicated in words and actions that he did not want to be around him. He struggled with his anger toward his brother for the sexual abuse he said the older boy subjected him to. No one disputes there is any relationship between the boys worthy of preserving.
The court also considers any relationship the child might have with other persons in his life. A friend of the mother, who claimed to be close to the boys, testified that she had a close bond with them; however, no other evidence from a neutral source corroborates any close relationship with any other persons in the boy's family or connected with his mother. Thus the court could properly place minimal value on the claimed relationship, at least to find no relationship sufficient to interfere with permanent custody or adoption.
The third factor for the court to consider is the wish of the child. A guardian ad litem's report concerning the wish of the child is considered by the court as expressing for the child what his wish is concerning custody. R.C. 2151.414(D)(2). In his handwritten report for the court the guardian indicates that he saw the boys once, on a visit at their mother's home one weekend in May 1999. The report states, [b]oth children told me everything was going very well with the home visits. Both children told me in no uncertain terms that they wanted to come home and live with their mother in Cleveland. Report of GAL, at 2. The guardian exhibited sketchy knowledge, however, of the children's situation. During a staff meeting with the social workers in November 1998, the guardian's questioning of the social workers at the hearing shows that he had little or no other contact with anyone in the case aside from those two interactions. He does not indicate he ever spoke with the boys outside their mother's presence regarding their wishes concerning their living arrangements, nor does he reference any contact with the social workers apart from the one meeting and a few phone messages.
The younger boy's treating social worker, Marcie Steepleton, presented a different picture from that of the guardian. Social worker Steepleton testified that although the younger boy would miss his mother and was struggling with the idea of losing her, he had said that he would be both happy and sad regardless of whether he was reunited with his mother or placed in permanent custody. He was well adjusted to his new life. The younger boy made it extremely clear to the social worker, moreover, that he did not want to live in his mother's home with his brother. He had also made it clear to other treating social workers that he could not tolerate the chaos of his mother's home. In other words, he will mourn the loss of his family but realizes his need for stability.
Because the guardian's opportunities for observation were so limited and because Ms. Steepleton's testimony arose from her treatment of the younger boy and is based upon more intensive interactions with the boys, the lower court could properly rely on her testimony to determine the younger boy's wishes.
The fourth factor is the custodial history of the child. As previously stated, the younger boy has been in county custody for over half his life. The older boy will be confined to a treatment facility indefinitely. This factor supports permanent custody of both boys.
The final factor to be considered is the child's need for a legally secure permanent placement. The younger boy has expressed his reluctance to even visit at his mother's home and has demonstrated a marked improvement in foster care. He obviously would benefit from a secure, permanent placement which eliminated the chaotic influence of his mother. The older boy needs to be in the treatment program provided by the county. Both boys have a strong need for a legally secure permanent placement.
In discussing her treatment of the younger boy, the treating social worker gave the following diagnosis: sexual abuse of a child, victim, adjustment disorder with mixed emotion and conduct, chronic, and caprices enuresis and * * * ruleouts [sic] for an anxiety disorder and a depression. This diagnosis is in part a result of the failure of the mother to properly supervise the boys. The mother admitted to social worker Cassidy that she had done nothing when the younger boy had complained to her about the older boy sexually abusing him.
Without addressing the truth of the allegations against the older boy, the court had clear and convincing evidence to determine the children's real interest. The older boy, now fifteen years old, also has been in county custody since early 1996, or nearly five years. Because home visits between the boys and their mother were suspended after the chaotic conditions at her home failed to change even after she completed parenting classes, because the one boy is in treatment and is accused by the younger boy of sexual abuse, and because the mother does not appear ready to cope with their problems and needs, the trial court had clear and convincing evidence that permanent legal placement with the county would be in their best interest.
The first assignment of error is therefore overruled.
The second assignment of error states:
 II. THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT MARGARET CORRIGALL FAILED TO REMEDY THE CONDITIONS THAT PROMPTED THE REMOVAL OF HER CHILDREN FROM HER HOME.
In determining permanent custody matters, the court is governed by R.C. 2151.414(E). That statute states in part:
 In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with his parents, the court shall consider all the relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. [Emphasis added.]
The case plan prepared by the county required mother to accomplish four goals to remedy the conditions which caused the county to take temporary custody of the boys. First, she was to successfully complete parenting classes. The social workers testified, however, that although mother attended full sessions of parenting classes twice, she failed to apply the training she received in the care of her children. The social workers provided testimony that they personally observed the boys return from visits with their mother unwashed, extremely hungry, and exhausted.
In fact, because they were unhappy with the conditions in their mother's home, the boys themselves drew up a list of requests of their mother for when they visited with her. The list, which was introduced into evidence, included regular meals at normal times, regular bedtimes, regular baths, and time with their mother without outsiders present. The boys and the social worker signed this list and presented it to her. Their mother did not, however, comply with these requests. According to social worker Tassie Fry, even after their last home visit with their mother, the boys were sent back to the foster home filthy dirty and very exhausted. This social worker also testified, I would stop and get them something to eat on the way home * * *. They would both get * * * Whopper meals at Burger King with large fries and a large drink. They appeared to be hungry. Despite the clear schedule the boys drew up in 1997, which listed a set time for each meal, daily bath, and family time, the boys returned in the same unsatisfactory condition from visits with their mother.
Providing another example of the mother's failure to learn proper parenting skills, one of the social workers testified that although she had instructed the mother not to keep animals in the home because they aggravated the older boy's asthma, she continued to have five cats in her home for a period of time. Mother had removed the cats when told to but returned them to the home after the social worker's visit. After one home visit, the boy had to be rushed to the emergency room for asthma-related respiratory problems.
After the home visits had been stopped because the social workers feared for the boys' safety in the home, visits were scheduled at Metzenbaum Center twice a month. Social worker James Warner testified that mother failed to appear at half of these scheduled visitations. The urgency of Mr. Warner's opinion was underscored by his testimony that he traveled from South Carolina, where he is now living, to testify at the hearing because he felt so strongly that permanent custody should be awarded to the county and that returning the boys to their mother's care would harm them.
Mother told another social worker, Kathleen Costello, that she had been in jail during the time the children were in county custody. Mother also admitted to a suicide attempt in 1997, while the boys were in county custody. The mother's admissions provide further evidence of the mother's inability to care for the boys and establish a safe home for them.
A significant element of the case plan required mother to establish safe and secure housing for the boys. Prior to the case plan being drawn up, mother had lived in four different residences in two years. At the time of hearing, she had lived at the same address for eight months. However, social worker Cassidy testified that when mother would rectify one problem, another problem would immediately take its place.
As further evidence that mother failed to remedy the conditions that prompted removal of the children from the home, mother admitted to social worker Cassidy that the younger boy had complained to her that the older boy had molested him. Mother's statement demonstrates that she has failed to progress in the case plan drawn up at the time the children were first removed from the home in April 1996. That case plan included the general goal that child will be maintained in a safe, stable, and nurturing environment. The mother's awareness of the younger boy's fear of his brother and her failure to take any steps to protect him in her home show that she is not providing him with a stable and safe environment. More telling is the case plan's statement of the special needs of the children: in this first case plan, written in 1996, the older boy's sexual acting out is addressed as needing supervision. According to social worker Cassidy, who did not become involved with this family until late 1998, the older boy continued to act out in sexually inappropriate ways up until the time of the permanent custody hearing. That the problem went without any attempt by mother to remedy it for two years is by itself clear and convincing evidence that mother was not able to fulfill the objectives of the case plan by providing a safe home and by providing supervision of her children.
Social worker Cassidy testified that she had received six to ten complaints concerning this family in the two weeks prior to the hearing. Most of those complaints related to the older boy's sexual behavior toward the younger boy. At the time of the hearing, the older boy had been placed in a sexual abuse counseling center and was being treated for perpetrating sexual abuse, and a criminal investigation of the allegations was underway.
Although Cassidy's testimony concerning the content of the complaints she received is hearsay and therefore not admissible as evidence, this court still finds that the record contains clear and convincing evidence to support a finding that it is in the best interest of the boys to be placed in permanent county custody.
Social worker Cassidy also gave her opinion that the mother had not learned from the parenting classes, and, therefore, she had never progressed to the point where the boys were safe in her care. The record demonstrates adequate evidence of mother's failure to change her parental conduct to allow her to resume and maintain parental duties. Id. Given mother's failure to correct the problems which caused the children to be removed from her custody, the trial court did not err in granting permanent custody to the county.
Appellant's third assignment of error states:
 III. THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT ADMITTED PREJUDICIAL HEARSAY INTO EVIDENCE UPON WHICH IT RELIED IN ITS DECISION TO TERMINATE CORRIGALL'S PARENTAL RIGHTS.
Appellant objects to the trial court's admission of and reliance on inadmissible hearsay. Counsel objected, for example, to social worker Cassidy's testimony that the mother's home lacked heat and electricity and the fact that the boys took turns sleeping with their mother because her fifteen-year-old niece was sleeping with her thirty-year-old boyfriend in the boys' beds. Cassidy had no first-hand knowledge of these details. Upon appellant counsel's objection to hearsay, the court stated:
 There comes a time in these kinds of cases we can't be verifying from independent sources. We have to get it from the people involved. The boys, if they made the statement, they are party in this action, and I think their statements, if they are recited to a health-care worker, are appropriate and admissible.
Tr. at 126-127.
Although the trial court is correct in observing that statements made to health care professionals are admissible as an exception to hearsay, the court was overly broad in applying the exception. Evidence Rule 803(4), which provides for this exception, states:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
 Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Except for the testimony of a treating social worker, the court erred in admitting social worker testimony that recited hearsay. The only county witness who qualifies under this exception is Marcie Steepleton, a social worker who became involved with the boys after the alleged sexual incidents perpetrated by the older boy on the younger boy occurred. Ms. Steepleton testified as to the boys' diagnoses and stated that she was treating the younger boy for sexual abuse by his brother. She had evaluated the older boy and diagnosed him, but was not treating him because he had been transferred to a specialized treatment program. Ms. Steepleton's testimony of statements by the boys, insofar as it relates statements used in her diagnoses and treatment, is therefore admissible under Evidence Rule 803(4).[4]
Ms. Steepleton, moreover, provided enough admissible evidence to support the court's findings, so allowing inadmissible hearsay is harmless error. Ms. Steepleton testified that the older boy had admitted to her that he had sexually abused his brother at his mother's home more than once. The younger boy had also reported to her this abuse by the older boy, and the boys' statements corroborated each other's.[5]
Ms. Steepleton's testimony regarding the younger boy's wishes concerning permanent placement was also admissible. She stated that
 [The younger boy] said that he would be both happy and sad, no matter what the [custody] decision was. He seems to be very comfortable where he is and, as many stressors as the child has occurred [sic], he seems to be relatively well-adjusted where he is. He said he would be sad. He would miss his family. He also said he would be sad missing his Mom if he wasn't placed with her. So, he seems to be struggling with that.
Tr. at 169.
 Appellant argues in her brief, [i]t is clear from reviewing the journal entry that much of the basis of the Juvenile Court's decision relied upon the inadmissible testimony of Costello. Ohio courts have stated that a disposition should not be overturned unless the court relied upon inadmissible hearsay. * * * Further, the Juvenile Court improperly admitted hearsay testimony from several other CCDCFS witnesses which was relied upon to make the permanent custody decision.
It is true that part of the trial court's opinion was based upon inadmissible hearsay. However, as Judge Rocco explained in his concurrence in In matter of Leverett (Mar. 26, 1998) Cuyahoga App. Nos. 71357, 71358, 71359, 71360, unreported, 1998 Ohio App. LEXIS 1167, at *7:
 An appellate court may decide an issue on grounds different from those determined by a trial court provided that the evidentiary basis for the appellate court's determination was made part of the record below. State v. Peagler (1996), 76 Ohio St.3d 496, 668 N.E.2d 489
(syllabus). Appellee's motion for permanent custody was filed pursuant to R.C. 2151.414(E)(1)-(8). Although the juvenile court's disposition of the motion was based on R.C. 2151.414(E)(2) (chronic mental illness), the Ohio Revised Code states that a custody finding can be based on any one or more of the following factors listed in (1)-(8).
 The statute mandates that the juvenile court determine what is in the best interest of the child.
 R.C. 2151.414(B). Recalling that the legislative intent behind R.C. 2151.414 was to provide * * * that each child receives proper parental care or guardianship and that it was designed to provide for social intervention into the biological family when the child's needs and welfare demand it, the juvenile court could have found sufficient evidence to grant permanent custody to appellee. In re Lay (1987), 43 Ohio App.3d 79, 539 N.E.2d 664.
Despite the trial court's inclusion of inadmissible evidence in its judgment entry, the record contains admissible evidence that is clear and convincing to support a finding that permanent custody was properly granted to the county: mother failed to protect the boys and provide them with a safe and stable environment; the older boy required residential treatment for his inappropriate sexual activity and would not improve in his mother's care; the younger boy would be harmed if he were returned to the chaotic home from which he emerged; the children were consistently returned in poor condition when they returned from a visit with their mother; the mother failed to integrate what she learned in parenting classes with her relationship with the boys; the mother admitted to a suicide attempt; the boys drafted a household schedule for the mother to follow and she did not follow it; and the mother kept cats in the home triggering an asthma attack in one of the boys. All these situations provided clear and convincing evidence that permanent county custody was in the best interest of the boys. This evidence was properly admitted and is clear and convincing to support the court's decision.
The record contains enough evidence to support the trial court's decision. Appellant's third assignment of error is overruled.
Appellant's fourth assignment of error states:
 IV. MARGARET CORRIGALL'S TRIAL ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE FAILED TO TIMELY OBJECT TO HEARSAY EVIDENCE THAT PREJUDICED CORRIGALL'S CASE.
Appellant's counsel objected four times during the course of the hearing. Three of these objections occurred after the statement by the court concerning the hearsay testimony of social worker Cassidy regarding the lack of heat and electricity in the home and the sleeping arrangements in the mother's home. One of the objections was to hearsay and was sustained by the court.[6] Counsel did not object, however, to statements by social worker Costello that mother failed to attend counseling sessions. Nor did counsel object to testimony by social worker Warner that the boys' teachers reported that the boys always acted out after home visits and that the younger boy did not wish to return to his mother's home, that the boys reported much drinking and smoking going on at the mother's home, that once they ate only eggs all weekend, that the boys were destructive and damaged their foster parents' home, and that mother had strangers spending the night while the boys were there.
Appellant also finds error in mother's counsel's twice inviting error by questioning witnesses directly about the sexual abuse the older boy perpetrated on the younger boy. In cross-examining social worker Cassidy, mother's attorney asked, am I understanding right that the only thing that has been substantiated in regards to these most recent allegations is that [the older boy] did, in fact, sexually abuse [the younger boy] in some way, to which social worker Cassidy replied, Yes. This testimony constitutes invited error in that mother's own counsel elicited from this witness testimony that was damaging hearsay. This invited error is harmless, however, because this evidence was separately and properly introduced by social worker Steepleton.
Any error by appellant's counsel is harmless, therefore, because adequate evidence exists outside the inadmissible hearsay to support the trial court's findings.
Appellant's fourth assignment of error is moot.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________ KARPINSKI, A.J.:
JAMES D. SWEENEY, J., and PATRICIA A. BLACKMON, J., CONCUR.
[1] Her oldest child, the product of incest by her father or one of her brothers, is already in permanent county custody. Her youngest child, who is severely handicapped, was placed in permanent county custody at her request because he was too difficult for her to handle.
[2] Mother had lived in four places in two years because she was repeatedly evicted for nonpayment of rent.
[3] For discussion of the admissibility of her testimony see assignment of error three.
[4] The court also correctly admitted evidence concerning the younger boy's bed-wetting and social worker Steepleton's opinion concerning how the younger boy would adapt to permanent custody.
[5] Steepleton testified that the younger boy had told her that only one incident had occurred outside the mother's home. She could not remember whether it had occurred at the foster home or at a respite home where the boys spent a weekend because the foster parents were unavailable. The fact that the older boy could get away with this behavior only at his mother's home is evidence of the lack of supervision mother provided and the unsafe environment in her home.
[6] The other two objections were to questions which required speculation. One of these objections was also sustained.